IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-00421-01-CR-W-HFS |
| ) | |
| PATRICK W. WILLIS, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant Patrick W. Willis' Motion to Suppress Evidence and Statements. (Doc. # 24) For the reasons set forth below, it is recommended that this motion be denied.

I. INTRODUCTION

On October 17, 2005, a criminal complaint was filed against defendant Patrick W. Willis. The complaint charged that on October 17, 2005, defendant knowingly possessed with intent to distribute five hundred grams or more of cocaine.

On November 15, 2005, the Grand Jury returned a one count indictment against defendant Willis. The indictment charges that on October 17, 2005, defendant knowingly possessed with intent to distribute five hundred grams or more of cocaine.

On March 7, 2006, the undersigned conducted an evidentiary hearing on the motion to suppress. Defendant Willis was represented by retained counsel Kenton M. Hall. The Government was represented by Assistant United States Attorney Kathleen Mahoney. The Government called Detectives Alex Lepper and Errol Riggins of the Kansas City, Missouri Police Department as

witnesses. The defense called no witnesses to testify.

## II. FACTS

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. On October 17, 2005, at approximately 6:30 a.m., Detectives Alex Lepper and Errol Riggins of the Kansas City, Missouri Police Department, Drug Interdiction Squad, were on duty at the Greyhound Bus Station in Kansas City, Missouri. (Tr. at 4-6) Detective Lepper observed persons exit a bus that had originated in California, a source state for narcotics. (Tr. at 5) Detective Lepper observed a passenger (later identified as defendant Willis) exit the bus. (Tr. at 5-6) Detective Lepper's attention was drawn to Willis because Willis stood on the platform and looked around in a nervous manner. (Tr. at 6) Detective Lepper lost sight of Willis after being contacted by Detective Riggins who wanted to conduct an interdiction in another part of the station. (Tr. at 6)

2. Detective Lepper again caught sight of defendant Willis outside the men's bathroom inside the terminal. (Tr. at 6-7) Willis was squatted down facing the wall. (Tr. at 7) In between Willis and the wall was a gym bag. (Tr. at 7) Willis pulled a cell phone and a cell phone charger out of the bag. (Tr. at 7) He looked over his shoulder a couple of times. (Tr. at 7) At that point, Detective Lepper conducted another interdiction with Detective Riggins. (Tr. at 7)

3. The third time Detective Lepper observed defendant Willis, Willis was sitting on a bench inside the terminal. (Tr. at 7) Detective Lepper approached Willis. (Tr. at 8) Detective Riggins was standing approximately five feet away from Detective Lepper and Willis. (Tr. at 46) Detective Lepper showed Willis his police identification and badge and asked if he could speak with Willis for a minute.[1] (Tr. at 8) Willis said yes. (Tr. at 8) Detective Lepper asked Willis if he could see Willis' bus ticket. (Tr. at 8) Willis provided the ticket to Detective Lepper. (Tr. at 8)

4. Detective Lepper testified that through past investigations involving drug couriers, he has discovered that many times drug couriers use one-way tickets that are purchased with cash on the day of travel. (Tr. at 9) The drug couriers often do not use their own names in purchasing the tickets. (Tr. at 9) One can travel on a Greyhound Bus without presenting identification so this allows drug couriers to travel anonymously. (Tr. at 9)

---

[1]Detective Lepper testified that defendant Willis was free at this point to walk away from Detective Lepper without interference from the police. (Tr. at 37-38)

5.  The ticket defendant Willis provided to Detective Lepper showed that it was a one-way ticket originating in Roseville, California, with a destination of Detroit, Michigan. (Tr. at 9) The ticket had been purchased with cash on the day of travel. (Tr. at 18; Government's Exs. 1 and 2) The name listed on the ticket was David Jones. (Tr. at 9) Detective Lepper asked defendant Willis if he was David Jones.[2] (Tr. at 10) Willis did not answer right away. (Tr. at 10) He hesitated and said, "Ah, yeah." (Tr. at 10) Detective Lepper asked Willis if he had any identification. (Tr. at 10) Willis responded, "I don't have any identification." (Tr. at 10) Detective Lepper testified that Willis was breathing heavily and shaking at this point. (Tr. at 10) Detective Lepper then explained to Willis that he was a police detective looking for passengers transporting anything illegal, firearms, narcotics, things like that. (Tr. at 10-11)

6.  Detective Lepper then asked defendant Willis if he could search his bag.[3] (Tr. at 11) Detective Lepper and Detective Riggins both testified that Willis nodded in a yes motion. (Tr. at 11, 48) Willis then turned to his left where the bag was sitting on a tile ledge, picked it up and set the bag down on the floor at their feet. (Tr. at 8, 11) Detective Lepper knelt down. (Tr. at 11) Willis leaned over, placed his hand on the bag and began unzipping the bag, opening it partially. (Tr. at 11) Detective Lepper then began the search of the bag. (Tr. at 11) Detective Lepper testified that he felt that through his actions, Willis had given non-verbal consent to search the bag.[4] (Tr. at 12) Detective Lepper also did not want to allow Willis to reach into the bag as there could be a weapon in the bag. (Tr. at 12)

7.  As Detective Lepper began his search, defendant Willis said, "It's just dirty clothes." (Tr. at 12-13) Detective Lepper felt a hard object wrapped in a t-shirt. (Tr. at 12) Detective Lepper opened up the t-shirt and saw a bundle wrapped in green cellophane, which based on his past experience, he believed to be a kilo brick of

---

[2] At this point, Detective Lepper did not know whether this person's name was David Jones or not. (Tr. at 19) However, Detective Lepper testified that based on his experience and the way the defendant was acting, Lepper did not believe that the person's name was David Jones. (Tr. at 19)

[3] Detective Lepper testified that if defendant Willis had picked up the bag and walked toward the exit door at this point, Lepper would have detained Willis to apply for a search warrant based on his behavior and based on the ticket information. (Tr. at 38)

[4] Detective Lepper did not offer defendant Willis an opportunity to sign a consent to search form. (Tr. at 33) It is police department policy that interdiction detectives are not required to have consent forms signed in order to perform a consent search. (Tr. at 33) Detective Lepper did not advise Willis that Willis did not have to agree to Lepper's request to search. (Tr. at 34)

cocaine. (Tr. at 12-13) As Detective Lepper found the bundle, Willis said, "You got it, you got it." (Tr. at 13)

8. Detective Lepper testified that defendant Willis never made any movement or indication to have Lepper stop searching. (Tr. at 13-14) Willis made no statements that indicated that Detective Lepper should stop searching or that Willis withdrew his consent. (Tr. at 14) Detective Riggins also testified that Willis did not make any movements or statements indicating that he did not want Detective Lepper to look in the bag. (Tr. at 49)

9. Detective Lepper nodded to his partner, Detective Riggins, as a signal that he had found narcotics and that he was going to make an arrest. (Tr. at 14) At that point, Detective Lepper advised defendant Willis that he was under arrest. (Tr. at 14) Willis stood up and began walking away. (Tr. at 14) Detective Lepper seized Willis' left arm. (Tr. at 14) Detective Riggins seized Willis' other arm. (Tr. at 14-15) The officers turned Willis and leaned him toward the ledge where the bag had been sitting and handcuffed him. (Tr. at 15, 58) Detective Lepper then explained in a loud manner that he was a police officer and that Willis was under arrest for possession of narcotics. (Tr. at 15) Detective Lepper did not want people to think that they were in a fight or something because the officers are in plainclothes. (Tr. at 15)

10. Defendant Willis was placed under arrest without further incident. (Tr. at 15) Detective Riggins searched Willis incident to his arrest. (Tr. at 15, 49-50) Detective Riggins recovered a small personal use of marijuana from Willis' person. (Tr. at 50) A billfold was also discovered on Willis' person inside of which was a California Identification Card, bearing the name Willis, Patrick W., as well as a picture bearing a likeness of him. (See Detective Lepper's Affidavit which is attached to the Criminal Complaint at ¶ 9)

11. The officers took Willis to an office in the bus terminal. (Tr. at 49-50) Detective Riggins read a Miranda Waiver form to Willis. (Tr. at 50) The Miranda Waiver provides:

> Before being asked any questions, I have been told of my right to remain silent, that anything I say can and will be used against me in court, that I have the right to talk with a lawyer and to have the lawyer with me during questioning. I have been told that if I cannot afford a lawyer that one will be appointed for me, at no cost to me, before I am questioned. I have also been told that I can stop talking at any time.

(Government's Ex. 6) Willis signed the Miranda Waiver at 7:16 a.m. (Government's Ex. 6)

4

12. Defendant Willis agreed to speak with Detective Riggins. (Tr. at 51) Detective Riggins asked Willis where he obtained the narcotics and Willis responded that someone unknown to him placed the bundle in his bag without him knowing. (Tr. at 51) Detective Riggins talked with Willis for approximately 25 minutes before ending the interrogation. (Tr. at 51) Willis continued to maintain that someone else had placed the bundle in his bag. (Tr. at 51) At no point did Willis ask for an attorney or state that he did not want to talk to Detective Riggins anymore. (Tr. at 51-52) The interrogation was ended because it was not going anywhere. (Tr. at 52)

13. Detective Riggins field-tested the bundle found in the gym bag and the substance found on defendant Willis' person. (Tr. at 52) The bundle showed a positive reaction to cocaine and the green leafy substance produced a positive reaction for marijuana. (Tr. at 52)

14. Defendant Willis was born in 1964. (Tr. at 15-16) Detective Lepper testified that Willis appeared to be of average intelligence and appeared to understand what Lepper was saying to him. (Tr. at 16) Willis had completed the 11th grade in school. (Tr. at 50-51) Willis did not appear to be under the influence of any alcohol or drugs. (Tr. at 16) Detective Lepper testified that he did not make any threats or physically intimidate Willis. (Tr. at 16) Although the officers were armed, their weapons were not visible. (Tr. at 4, 45) Detective Lepper testified that the tone of his voice was calm and courteous when he spoke to Willis. (Tr. at 16) Detective Lepper did not make any promises to Willis. (Tr. at 16) They were in a public area with other people around. (Tr. at 16-17)

15. The Government requested that the Court take judicial notice of defendant Willis' criminal history. (Tr. at 2) The detention order entered in this case provides the following with respect to the criminal history of the defendant:

> The defendant has a prior felony conviction for robbery 1st degree. He also has convictions for tamper with vehicle and inflict corporal injury/spouse/cohab. He has an arrest history that includes arrests (charges dismissed/unknown/released) for burglary, probation violation (twice), battery, vandalism (twice), obstructs/resists public officer, possession/purchase cocaine base for sale, vehicle theft, parole violation, loiter public place: illegal, and drug activity.

(doc #12)

## III. DISCUSSION

Defendant Willis seeks to suppress "any and all items seized as the result of an unlawful

5

search of defendant's luggage and to suppress any and all statements made by defendant during the unlawful search and following his arrest." (Motion to Suppress Evidence and Statements at 1) Defendant Willis argues that: (1) the stop, detention and questioning of him was conducted without articulable facts to support it and was, therefore, constitutionally impermissible; (2) defendant's words and actions did not constitute an expression of consent to search the bag; (3) any purported consent, if given at all, was not freely and voluntarily given; and (4) defendant's statements were made as the result of the unlawful search and, as such, are fruit of the poisonous tree.

The Supreme Court has described three categories of police-citizen encounters. The first is communication between police and citizens which involves no coercion or restraint of liberty and, therefore, is outside the scope of the Fourth Amendment. The second is a brief, minimally intrusive seizure or investigative stop which must be supported by a reasonable suspicion of criminal activity. The third is a highly intrusive full-scale arrest which must be supported by probable cause. The minimally intrusive stop supported by reasonable suspicion and the full-scale arrest supported by probable cause involve Fourth Amendment considerations. See United States v. Cortez, 449 U.S. 411, 417 (1981); Reid v. Georgia, 448 U.S. 438, 440 (1980); Brown v. Texas, 443 U.S. 47, 50 (1979); United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975); Terry v. Ohio, 392 U.S. 1, 16-19 (1968); United States v. Campbell, 843 F.2d 1089, 1092-95 (8th Cir. 1988).

Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual in a public place and asking him questions. See United States v. Jones, 990 F.2d 405, 408 (8th Cir.), cert. denied, 510 U.S. 934 (1993); United States v. Campbell, 843 F.2d 1089, 1092 (8th Cir. 1988). No objective justification is required for such an encounter because no constitutional interest is implicated. See United States v. Mendenhall, 446 U.S. 544, 554-55 (1980); United States v.

6

Nunley, 873 F.2d 182, 184 (8th Cir. 1989); Campbell, 843 F.2d at 1092. Likewise, a search of an individual's baggage done with the individual's consent does not automatically escalate the consensual encounter into an investigative stop. See Florida v. Bostick, 501 U.S. 429, 435 (1991); United States v. Robinson, 984 F.2d 911, 914 (8th Cir. 1993). A court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. See Bostick, 501 U.S. at 439; Robinson, 984 F.2d at 913. As long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual. Only when an officer, by means of physical force or show of authority, has in some way restrained the liberty of an individual should a court conclude that a seizure has occurred. See Bostick, 501 U.S. at 434; Robinson, 984 F.2d at 913-14.

In Robinson, the Eighth Circuit affirmed the district court's ruling that the situation preceding Robinson's arrest was nothing more than a consensual encounter. The pertinent facts of the Robinson case were set forth as follows:

> On the morning of November 30, 1990, Robinson arrived at the Kansas City Amtrack station on the 7:15 a.m. train from Los Angeles. ... [Detective] Sola approached Robinson and asked if he could talk to him. Robinson agreed and Sola showed Robinson his badge and sat in the chair next to him. Sola told Robinson that he regularly talked to Amtrack passengers and again asked if Robinson had the time to talk to him. Robinson agreed. Sola then asked to see Robinson's ticket, which was a one-way ticket from Los Angeles to St. Louis in the name of John Jones. The connecting train was scheduled to depart at 9:15 a.m.

> When Sola asked Robinson for identification, Sola noticed that Robinson appeared very nervous and seemed to have difficulty swallowing. Robinson was unable to locate any identification and stated that his name was John Robinson and he lived in Lynwood, California. ... At this point Sola asked if he could search Robinson's luggage for narcotics, to which Robinson answered "No." Sola then told Robinson that he would order a narcotics-trained canine to sniff his luggage.

7

> Robinson said that he "did not want a dog" and told Sola to go ahead and look in the luggage. Sola told Robinson that he did not have to give permission to search the bags but Robinson said that Sola could search the bags.

Id. at 912. Upon a search of Robinson's luggage, Sola discovered a box of cocaine and placed Robinson under arrest. Id. at 913. The Eighth Circuit concluded:

> During the questioning, the police detectives did not display their weapons or threaten to arrest Robinson. The police detectives did not use physical force or show of authority to detain Robinson in the terminal. Detective Sola began questioning Robinson around 7:30 a.m. and his train was not scheduled to depart until 9:15 a.m.; by his own actions, Robinson was detained in the terminal for over an hour and a half. Under the facts of this case, the district court was not clearly erroneous in finding that the continued questioning was a consensual encounter that did not constitute a Terry stop.

Id. at 914.

In the present case, the contact between Detective Lepper and defendant Willis was consensual. Detective Lepper approached Willis in a public place, identified himself as a police officer and asked if he could speak with Willis. (See Fact No. 3, supra) Willis said yes. (Id.) Detective Lepper asked Willis if he could see his bus ticket. (Id.) Willis provided the ticket to the detective. (Id.) Detective Lepper asked Willis if he had any identification. (See Fact No. 5, supra) Willis responded that he did not. (Id.) Detective Lepper asked if he could search Willis' bag. (See Fact No. 6, supra) Willis nodded yes, set the bag at Detective Lepper's feet and unzipped the bag. (Id.) Up until this time, Detective Lepper was the only officer who had any contact with Willis. During his conversation with Willis, Detective Lepper had not displayed any weapons or threatened to arrest Willis. He had not used physical force or a show of authority to detain Willis. Willis had not been told he could not leave.

The Court finds that a reasonable person would have felt free to decline Detective Lepper's

requests and terminate the encounter. Under Robinson, the facts of this case warrant a conclusion that the questioning of defendant and the search of his bag constitute a consensual encounter that did not constitute a Terry stop. Prior to discovering the cocaine in defendant Willis' bag, Detective Lepper neither detained nor interrogated Willis.

However, even if the Court were to find that the original consensual encounter escalated into an investigative stop and a reasonable person would not have felt free to terminate the encounter, Detective Lepper had a reasonable suspicion of criminal activity by the time he requested defendant's consent to search. Defendant Willis originally caught Detective Lepper's attention when he stood on the platform after exiting the bus and look around in a nervous manner. (See Fact No. 1, supra) Later, Detective Lepper observed Willis looking over his shoulder a couple of times while he pulled a cell phone out of his bag. (See Fact No. 2, supra) The bus ticket produced by Willis to Detective Lepper was a one-way ticket purchased with cash on the day of travel. (See Fact No. 5, supra) Detective Lepper testified that through past investigations involving drug couriers, he has discovered that many times drug couriers use one-way tickets that are purchased with cash on the day of travel. (See Fact No. 4, supra) Drug couriers often do not use their own names in purchasing the tickets so that they can travel anonymously. (Id.) Defendant Willis hesitated before telling Detective Lepper that his name was David Jones, the name listed on the ticket. (See Fact No. 5, supra) Willis could not produce any identification. (Id.) Detective Lepper testified that based on his experience and the way the defendant was acting, Lepper did not believe that the person's name was David Jones. (Id. at n.2) In addition, Willis began breathing heavily and shaking while Detective Lepper was talking to him. (See Fact No. 5, supra)

Defendant Willis' argument that the stop, detention and questioning of him was conducted

9

without articulable facts to support it and was, therefore, constitutionally impermissible must fail.

Defendant Willis next argues that his words and actions did not constitute an expression of consent to search the bag. This argument is not supported by the facts presented at the hearing. Detective Lepper and Detective Riggins both testified that Willis nodded in a yes motion when Lepper asked if he could search the bag. (See Fact No. 6, supra) Willis then picked up the bag, set the bag at Detective Lepper's feet and unzipped the bag. (Id.) Both Detective Lepper and Detective Riggins testified that Willis did not make any movements or statements indicating that he did not want Lepper to look in the bag. (See Fact No. 8, supra) Detective Lepper properly concluded that defendant Willis had given non-verbal consent to search the bag.

Defendant's third argument, that Detective Lepper coerced defendant's consent to search his bag, must also fail. A search that is conducted pursuant to a valid consent does not violate the Constitution. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); United States v. Ramey, 711 F.2d 104, 107 (8th Cir. 1983); United States v. Matthews, 603 F.2d 48, 51 (8th Cir. 1979), cert. denied, 444 U.S. 1019 (1980). The test in reviewing a consent search is whether, in the totality of the circumstances, the consent was given voluntarily and without coercion. See United States v. Palacios-Suarez, 149 F.3d 770, 772 (8th Cir. 1998); United States v. Barahona, 990 F.2d 412, 417 (8th Cir. 1993); United States v. Turpin, 707 F.2d 332, 334 (8th Cir. 1983); United States v. Dennis, 625 F.2d 782, 793 (8th Cir. 1980). In United States v. Sanchez, 156 F.3d 875 (8th Cir. 1998), the Eighth Circuit Court of Appeals set forth the following with respect to the relevant circumstances:

> Whether consent is voluntary depends upon the "totality of the circumstances." When evaluating such circumstances, we pay particular attention to the characteristics of the person giving consent and to the encounter from which the consent arose. Relevant characteristics of the consenting party include age, intelligence and education; chemical intoxication (if any); whether the individual was

informed of the right to withhold consent; and whether the suspect generally understood the rights enjoyed by those under criminal investigation. To assess the environment surrounding the consent, we consider the length of time that the suspect was detained and questioned; whether the police intimidated the suspect; whether the suspect relied upon promises or misrepresentations made by the police; whether the suspect was in custody when the consent was given; whether the encounter occurred in a public or secluded place; and whether or not the suspect objected to the search.

Id. at 878 (citations omitted).

Based on the evidence presented at the hearing, the Court finds that when Detective Lepper asked defendant Willis if he could search his bag, Willis nodded in a yes motion, set the bag at Detective Lepper's feet and unzipped the bag. (See Fact No. 6, supra) Willis was not in custody when he consented to the search. Both Detective Lepper and Detective Riggins testified that Willis did not make any movements or statements indicating that he did not want Lepper to look in the bag. (See Fact No. 8, supra) Detective Lepper did not make any threats or physically intimidate Willis. (See Fact No. 14, supra) They were in a public area with other people around. (Id.) Lepper's firearm was not visible to Willis. (Id.) Detective Lepper testified that the tone of his voice was calm and courteous when he spoke to Willis. (Id.) Detective Lepper did not make any promises to Willis. (Id.) Willis was 41 years old. (Id.) He had completed the 11th grade in school and appeared to be of average intelligence. (Id.) Willis was not unfamiliar with the legal system as evidenced by his criminal history and the fact that he had been arrested on numerous occasions. (See Fact No. 15, supra) While Detective Lepper did not advise defendant that he did not have to consent to a search, Lepper was under no obligation to do so. See United States v. Palacios-Suarez, 149 F.3d 770, 773 (8th Cir. 1998).

The Government met its burden in establishing that defendant Willis' consent to search was freely and voluntarily given and not the result of duress or coercion.

11

Case 4:05-cr-00421-HFS   Document 32   Filed 03/31/06   Page 11 of 13

Defendant's fourth argument, that statements made as the result of the unlawful search are fruit of the poisonous tree and must, therefore, be suppressed, also fails. As set forth above, contrary to defendant's argument, Detective Lepper did not conduct an unlawful search. Therefore, any statement made by defendant could not be considered a fruit of the poisonous tree.

Finally, in supplemental briefing, defendant requests that the Court consider whether Detective Lepper:

> 1) unconstitutionally *seized* defendant's carry on bag in the absence of a) reasonable suspicion and b) a clear and unequivocal expression of consent; and thereby vitiated any consent that pre-existed the seizure; and
>
> 2) whether defendant's gym bag was subsequently searched without probable cause, all in violation of the Fourth Amendment.

(Supplemental Suggestions Post-Hearing in Support of Defendant's Motion to Suppress Evidence and Statements at 2) Again, as set forth above, Detective Lepper did not conduct an unlawful search. Defendant Willis clearly consented to the search. Probable cause was not necessary to justify the search.

## IV.  CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Willis' Motion to Suppress Evidence and Statements (doc. #24).

Counsel are reminded they have ten days in which to file any objections to this Report and Recommendation. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the

district judge, except on the grounds of plain error or manifest injustice.

                                                                         */s/ Sarah W. Hays*
                                                      SARAH W. HAYS
                              UNITED STATES MAGISTRATE JUDGE